***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Young and Deputy Commissioner Glenn, and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of former Deputy Commissioner Young, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant at all relevant times herein.
3. Defendant was self insured at all relevant times herein.
4. The parties stipulated that plaintiff's average weekly wage was $302.00, yielding a compensation rate of $201.34.
5. The parties stipulated to plaintiff's medical records from Triangle Orthopaedic Associates, P.A.; Durham Regional Hospital; Durham Clinic; Duke Urgent Care; and HealthSouth.
6. The parties also stipulated into evidence the surveillance videotapes of plaintiff and accompanying private investigation reports.
7. The issue presented is whether plaintiff remains temporarily totally disabled.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before former Deputy Commissioner Young, plaintiff was 40 years old. He had worked for defendant since October 13, 1997, as a laborer.
2. On February 6, 1998, plaintiff sustained a compensable injury by accident to his back. Defendant accepted plaintiff's claim by filing a Form 60 on July 31, 1998. Accordingly, plaintiff's full salary was continued as temporary total disability compensation.
3. Plaintiff received treatment from several medical providers following his February 6, 1998 injury. On May 27, 1998, Dr. Peter Bronec, a neurosurgeon, performed a T8-9 partial hemilanectomy and discectomy on plaintiff.
4. On October 1, 1998, Southwind Spine Rehabilitation Center administered a Functional Capacity Evaluation to plaintiff. The evaluation revealed that plaintiff was capable of performing work in the medium physical demand category as per U.S. Department of Labor strength factors. Plaintiff returned to work for defendant, working six hours per day.
5. On December 1, 1998, Dr. Bronec concluded that plaintiff had reached maximum medical improvement and gave plaintiff a 10% permanent partial disability rating to his back. Plaintiff still complained of pain, so Dr. Bronec referred plaintiff to a physiatrist, Dr. Robert J. Wilson, for pain management.
6. On December 14, 1999, Dr. Wilson also opined that plaintiff was at maximum medical improvement and gave plaintiff a 25% permanent partial disability rating to the back. Dr. Wilson further stated that he did not believe that plaintiff could be gainfully employed at that time because of plaintiff's chronic pain difficulties. Dr. Wilson was of the opinion that plaintiff could not perform certain activities, which included prolonged sitting, standing, and walking, and wrote plaintiff out of work.
7. During the months of June 1999 through approximately October 1999, defendant contracted with Corporate Surveillance Investigations, Inc. (CSI), to have extensive surveillance on plaintiff on multiple dates. Based on the information contained in the surveillance videos, defendant filed an Industrial Commission Form 24 Application to Terminate Plaintiff's Disability Benefits on December 17, 1999. The Industrial Commission Form 24 Application was denied. Defendant filed an Industrial Commission Form 33 Request for Hearing appealing the Commission's decision.
8. At hearing, Deputy Commissioner Young found that the surveillance conducted on plaintiff established that plaintiff is capable of performing activities inconsistent with his restrictions, and that he is able to perform some type of work. However, the Full Commission disagrees with the probative value of the surveillance tapes. At the hearing before Deputy Commissioner Glenn regarding the authenticity and credibility of the tapes, it became evident that most of the footage of plaintiff was interrupted by breaks, or pauses, in the continuity of filming. Donald Anderson, a member of the CSI surveillance team, testified that these breaks in filming were caused by several factors, including obstructions in his view of the plaintiff (people, automobiles, etc.); difficult filming conditions (the summer heat often made his hands too sweaty to hold the camera); and the need to work undercover (to avoid drawing unwanted attention, filming of plaintiff was stopped if a passerby was near to the surveillance team).
The plaintiff has asserted that the surveillance tapes may have been edited to bolster defendant's position; however, the Full Commission finds Mr. Anderson's explanation regarding the frequent breaks in filming to be credible. In spite of this finding, the fact remains that the surveillance tapes of plaintiff do contain a large number of breaks, or pauses, in filming. Of issue in this matter is whether plaintiff is capable of engaging in certain activities for a prolonged time. The Full Commission finds that the choppy nature of the surveillance tapes does not provide an adequate opportunity to judge plaintiff's abilities over a prolonged time, thus, diminishing the probative value of the tapes. Although the tapes may show plaintiff walking, standing, and conducting day-to-day activities for five to twenty minutes at a time, these acts alone cannot be sufficient for the Full Commission to conclude on such basis alone that plaintiff has retained wage earning capacity.
9. Although the video surveillance tapes are non-determinative in this matter, the Full Commission finds that the medical evidence in this case is sufficient to establish that plaintiff is currently employable. As stated supra, a functional capacity examination performed by Southwind Spine Rehabilitation Center on October 1, 1998, showed that plaintiff possessed the capacity to perform strength demands in the medium work category as per U.S. Department of Labor strength factors. Dr. Bronec, plaintiff's neurosurgeon, concluded that plaintiff had reached maximum medical improvement on December 1, 1998, and gave plaintiff a 10% permanent partial disability rating to the back; and Dr. Wilson, plaintiff's physiatrist, concluded that plaintiff had reached maximum medical improvement on December 14, 1999, and gave plaintiff a 25% permanent partial rating to the back. Additionally, the record shows that Dr. Paul Wright of the Durham Orthopedic Clinic found plaintiff to be at maximum medical improvement on January 14, 1999, and gave plaintiff a 15% rating of the back. The Full Commission finds that conflicting medical opinions regarding the extent of plaintiff's disability should be interpreted in the light most favorable to plaintiff and, thus, finds plaintiff to be at maximum medical improvement as of December 14, 1999, with a 25% partial rating to the back.
10. Of the number of physicians whom the plaintiff treated with, Dr. Wilson is the only physician to have kept plaintiff out of work for an extended period (with the exception of plaintiff's post-surgery recovery), thereby allowing plaintiff to continue to receive temporary total disability. However, Dr. Wilson did not give testimony to support plaintiff's claim for continuing temporary total disability payments. After viewing the surveillance tapes of plaintiff, Dr. Wilson contradicted his prior opinions regarding plaintiff's disability. Because the Full Commission has declined to assign any probative value to the surveillance tapes in this matter, the Full Commission finds that any testimony made by Dr. Wilson pursuant to such tapes must also lack probative value. Thus, the Full Commission finds that the medical records of Drs. Bronec and Wright, and the results of the functional capacity exam performed by Southwind Spine Rehabilitation Center provide credible evidence that plaintiff is capable of a return to work and no longer due temporary total disability compensation.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of his employment with defendant and as a direct result of a specific traumatic incident of the work assigned to him on February 6, 1998. N.C. Gen. Stat. § 97-2(6).
2. Defendants admitted the compensability of plaintiff's injury by filing a Form 60 on July 31, 1998. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277, disc. rev. denied, 353 N.C. 729,550 S.E.2d 782 (2001). Based upon the competent medical evidence of record, plaintiff failed to carry his burden of proving that he remains temporarily totally disabled.
3. Because plaintiff has failed to prove total disability, the burden of proof does not shift to defendant to prove plaintiff's employability.Dalton v. Anvil Knitwear, 119 N.C. App. 275, 284, 458 S.E.2d 251, 257
(1995) (holding that once plaintiff has met his initial burden as to disability, the burden shifts to defendant to show that plaintiff is employable). Thus, the Full Commission declines to make a determination as to the credibility and authenticity of the surveillance videos, as they were not dispositive in this matter. Such evidence, provided by defendant to negate plaintiff's proof of disability, is simply not proper when plaintiff fails to meet his own burden of proof.
4. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to permanent partial disability compensation benefits for 75 weeks at a compensation rate of $201.34 per week for the 25% permanent partial impairment rating to his back. Such compensation shall be calculated from December 14, 1999, the date the Full Commission finds plaintiff reached maximum medical improvement.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff permanent partial disability rating benefits for 75 weeks, beginning on December 14, 1999, at a compensation rate of $201.34 for the 25% permanent partial disability rating assigned to his back, subject to a reasonable attorney's fees herein approved. Because such compensation has accrued, payment shall be made in a lump sum.
2. Defendant shall pay to plaintiff's counsel a reasonable attorney's fee of 25% of the compensation benefits due plaintiff under Paragraph 1 of this Award. Because the compensation upon which such fees are based has accrued, payment shall be made in a lump sum.
3. Each side shall bear its own costs, with the exception of expert witness fees. Defendant shall pay expert witness fees of $275.00 to Dr. Bronec, and $225.00 to Dr. Wilson.
This 10th day of March 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER